IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case Number:

STEVE LOLESKI, and LYNETTE LOLESKI
 and as parent of minor child JL.

                                                Plaintiffs,

v.

The CITY OF FORT LAUDERDALE, a municipality, and
RANDALL PELHAM, in his individual capacity as an officer
with the City of Fort Lauderdale Police Department,

                                                Defendants.
_____/

**COMPLAINT**

David A. Frankel, Esq.
**Law Offices of David A. Frankel, P.A.**
20 South East 20th Street
Fort Lauderdale. Florida 33315
(954) 683-0300
Fla. Bar Number 741779
david@BlueLotusLaw.com
Service@BlueLotusLaw.com

*Attorney for Plaintiffs*

1

Plaintiffs, STEVE LOLESKI, LYNETTE LOLESKI individually and as parents of minor child, JL, sue Defendants, CITY OF FORT LAUDERDALE, and RANDALL PELHAM, jointly and severally, and say:

## NATURE OF THE ACTION

1. This is an action for damages arising from violations of federal civil rights and the laws of the State of Florida resulting from the unlawful arrest of STEVE LOLESKI, and the unlawful assault and detention of his wife LYNETTE LOLESKI and their six (6) year old son JL, during the execution of an arrest warrant.

## JURISDICTION AND VENUE

2. The action is brought pursuant to 42 U.S.C. §§1983, 1988, the Fourth, and Fourteenth Amendments to the United States Constitution, and the tort laws of Florida. Jurisdiction is founded on 28 U.S.C. §§1331, 1343, 42 U.S.C. §1988, the constitutional provisions mentioned above, and under the tort laws of Florida. Supplemental jurisdiction, and joinder of parties for additional state law claims is proper pursuant to 28 U.S.C. §1367(a) because they form part of the *same case or controversy*. Plaintiffs assert multiple state tort law claims.

3. In connection with the acts, practices and violations alleged below, the Defendants have each directly violated clearly established constitutional rights, as well as statutory and common law duties owed to each Plaintiff.  Under 28 U.S.C. § 1391(b)(2), venue lies in the District Court for the Southern District of Florida, Fort Lauderdale Division, because it is the judicial district and division in which a substantial part of the events or omissions giving rise to the claims occurred.

## PARTIES

4. The Plaintiff STEVE LOLESKI, is the natural parent of JL and at all times material hereto has been a resident of Broward County, Florida, over the age of eighteen years and otherwise able

to sue in his own capacity.

5. The Plaintiff LYNETTE LOLESKI, is the natural parent of JL, and at all times material hereto has been a resident of Broward County, Florida, over the age of eighteen years and otherwise able to sue in her own capacity.

6  In addition to claims brought on their own behalf STEVE and LYNETTE LOLESKI bring suit on behalf of their minor child JL who was six (6) years of age at the time of the events complained of herein.

7. Defendant CITY OF FORT LAUDERDALE ("CITY") is a municipal entity incorporated in the State of Florida whose boundaries are located wholly within Broward County. The FORT LAUDERDALE Police Department is a subdivision of the CITY, created and designated to provide law enforcement services subject the all Federal and State statutes and constitutional provisions.

8. Defendant RANDALL PELHAM ("PELHAM") was a duly appointed law enforcement officer of the FLPD, at all times material hereto acting under color of law, to wit: under the color of statutes, ordinances, regulations, policies, practices, customs and usages of the CITY, and/or the State of Florida. Defendant PELHAM is being sued in his individual capacity.

## GENERAL ALLEGATIONS

A. Conflict within the IAFF Local 765

9. Plaintiff STEVE LOLESKI joined the City of Fort Lauderdale Fire/Rescue Department ("FLFD") in March 2007 as a firefighter, and has remained employed in that capacity until the present.

10. The Fort Lauderdale Professional Firefighters, IAFF Local 765 ("Local 765") is the recognized labor union representing the rights of the professional firefighters of the FLFD, and

whose contractual responsibilities to its members include collective bargaining over wages, benefits, and working conditions for their membership, and representing their members in disputes with management.

11.     At all times material hereto STEVE LOLESKI was a member of Local 765.

12.     At all times material hereto WILLIAM HUMPHREY ("HUMPHREY") was the elected president of Local 765, and Michael SALZANO ("SALZANO") was the vice president of Local 765.

13.     At all times material hereto JEFFREY JUSTINAK was the Fire Chief of the FLFD. Chief JUSTINAK was the final policy maker for the FLFD and responsibility for the decisions to hire and fire the firefighters in his employ.

14.     On or about late November 2011 through early January 2012 members of the FLFD, including FLFD firefighter/paramedics FREDDIE BATTISTA, DAVID MERCADO, GREG JONES, JOSEPH PERRI, MICHAEL RIEMER, and later STEVE LOLESKI, learned that HUMPHREY as their highest level union representative, was conspiring with the FLFD and Fire Chief JUSTINAK to have them terminated from their employment in violation of the collective bargaining agreement between the FLFD and Local 765. At the time FLFD was investigating whether these firefighters, and others, had submitted false documentation regarding the completion of the required renewal classes for re-certifications in Advanced Course of Life Support. There was an inquiry regarding whether or not the above-named firefighter/paramedics attended the required training since their names were not included on the class rosters submitted to the State Department of Health. A dispute existed at the time, whether the records of the course attendance were accurately completed and whether or not the training they received was sufficient, and accurately reflected in the records submitted by the FLPD to the State of Florida. The dispute included an inquiry by the

Department of Health of allegations that the records of attendance by the members of FLFD were inaccurately completed, the result of ministerial inaccuracy or fraudulently submitted.

15.     Since the outcome of the dispute could result in disciplinary or administrative actions against the union members that could impact the collective bargaining rights of the union members subject to the inquiry, it was the obligation of the Local 765 Union to represent the interests of the individual members of the Firefighters. As one of the union members, STEVE LOLESKI had good faith concerns about the manner in which the union hierarchy, such as the Vice President SALZANO and President HUMPHREY were representing his and the other members' interests. STEVE LOLESKI was made aware of facts that SALZANO and HUMPHREY were not representing the union members' interests and acting in a manner that was inherently in conflict with the interests of the union membership. Contrary to their duties as elected union officials, SOLZANO and HUMPHREY were conspiring with the FLPD Chief JUSTINAK to undermine the rights of union members by suggesting their support for the termination of employment of the union members including LOLESKI.

16.     The participation of HUMPHREY in this conspiracy was confirmed in a closed door meeting in Chief JUSTINAK'S office on or about November 2011 wherein Chief JUSTINAK, HUMPHREY, and SALZANO discussed the conspiracy, and agreed to find pre-textual reasons to terminate the employment of certain targeted Firefighter/Paramedics that would withstand administrative scrutiny and challenge pursuant to the Union bylaws or the City's Collective Bargaining Agreement ("CBA").

17.     At the meeting, one of the persons present (whose identity has yet to be determined) surreptitiously recorded the conversation.

18.     Plaintiff, STEVE LOLESKI was not present at the meeting and only learned of the recording later when it was disclosed to another FLFD firefighter.

19.     On or about early January 2012, Firefighter REIMER disclosed the existence of the recording, and played an audio copy of the recording to SOLZANO, a FLFD firefighter and the Local 765 Union Vice President. After listening to the recording, SOLZANO refused to confront HUMPHREY on behalf of the targeted firefighters.

20.     STEVE LOLESKI independently communicated with SALZANO and demanded first, an explanation of what appeared to be a clear conflict of interest by SALZANO, and he then demanded to personally meet with Local 765 Union President HUMPHREY directly.

21.     LOLESKI informed SOLZANO that he intended to initiate the impeachment of SALZANO and HUMPHREY from their official posts pursuant to national and local union bylaws. STEVE LOLESKI scheduled a meeting with the Union President HUMPHREY to inform him of his intention to seek his removal from his position for failing to uphold his duties as the Union President. At that meeting STEVE LOLESKI raised three issues. LOLESKI confronted HUMPHREY regarding the betrayal and abdication of his loyalty and duties as the union president. Specifically, LOLESKI demanded to know why HUMPHREY was actively trying to have him, and the other mentioned firefighters fired, and at the same time working to save the jobs of other firefighters still the subject of the Department of Health inquiry. Secondly, STEVE LOLESKI demanded that HUMPHREY resign as President of Local 765 because he had fundamentally breached his duties, responsibilities and loyalty to its membership. Thirdly, STEVE LOLESKI unequivocally informed HUMPHREY that he intended to disseminate the substance of the recording to the membership of the Local 765 regardless of any action undertaken by President HUMPHREY, as LOLESKI believed it was his duty.

22.     At no time did STEVE LOLESKI inform, threaten or suggest, in any manner that HUMPHREY's resign his position as an officer with the Local 765 "or else" the recording would be made public, or that resignation by HUMPHREY was a *quid pro quo* for STEVE LOLESKI suppressing the recording and/or preventing any other person from hearing its contents. Both HUMPHREY and SOLZANO have since given sworn testimony stating that STEVE LOLESKI made no such threat, and that STEVE LOLESKI was very clear that his intention was unequivocal that he intended to make the contents of the recording widely known whether HUMPHREY chose to resign or not.

23.     As of July 11, 2012, at the time HUMPHREY, SOLZANO and STEVE LOLESKI met to discuss the FLFD and Department of Health allegations regarding any alleged questionable training certifications and HUMPHREY'S improper collusion with the FLFD, STEVE LOLESKI had no knowledge that a criminal justice investigation against STEVE LOLESKI or any other firefighter had been initiated or pending.

24.     In fact, at the meeting, as later stated in sworn testimony, PELHAM was advised by HUMPHREY and SOLZANO that, STEVE LOLESKI advised them that his desire for a meeting was to notify them that he intended to seek the assistance of the Firefighters national and local union procedures and bylaws to secure their impeachment or removal from their union executive positions. HUMPHREY and SALZANO further advised PELHAM that neither at that meeting, nor any other time, did Plaintiff STEVE LOLESKI make any statements, words, acts, threats, or inference that HUMPREY'S resignation, or willingness to reveal information regarding the Department of Health inquiry was a *quid pro quo*, or related in any way to whether STEVE LOLESKI would publicize the substance of the recording made in the office of Chief JUSTINACK.

25.     At the meeting, it was made clear to PELHAM that based on the statements of Plaintiff STEVE LOLESKI at the July 11, 2016 meeting, LOLESKI intended to publicize the recording "no matter what."

26.     As a result of the information provided to him by HUMPHREY and/or SOLZANO at the meeting on July 12, 2012, PELHAM had actual knowledge, or should have known, but chose to ignore, that there was not reasonable suspicion or arguable probable cause to believe that STEVE LOLESKI had committed extortion against HUMPHREY or attempted to solicit the disclosure of confidential information related to a criminal investigation.

        C.   False Investigation

27.     Despite his actual knowledge of a lack of criminal conduct, and in an effort to assist HUMPHREY in retaining his position as President of FLFD Local 765, PELHAM, on or about July 12, 2012, initiated an official criminal investigation by obtaining formal sworn statements, acting under the color and authority of law, to falsely arrest STEVE LOLESKI.

28.     PELHAMS investigation consisted of taking four sworn statements, none of which consisted of testimony that would establish the elements of the crimes of Extortion or the Solicitation to Commit the Disclosure of Confidential Criminal Information that would be in violation of the criminal laws of the State of Florida. The statements taken by PELHAM did provide exculpatory information regarding potential crimes alleged to have been committed by STEVE LOLESKI.

29.     On August 1, 2012, FLPD Defendant PELHAM executed a false Affidavit in Support of STEVE LOLESKI'S arrest wherein he either intentionally, or reckless indifference to the truth, omitted material facts. More specifically, PELHAM  omitted the sworn testimony of Union President HUMPHREY, wherein he advised that LOLESKI stated to HUMPHREY and SOLZANO that his stated purpose was; to utilize union procedures and bylaws to obtain the impeachment or

removal of the union officers HUMPHREY and SOLZANO, and separately, as a union member, he indicated that it was his right under the bylaws to be informed of the status, and actions pending against the union members that were the subjects of the administrative Department of Health inquiry concerning the ACLS re-certifications.

30.     On August 1, 2012, PELHAM presented a prepared search warrant to Broward Circuit Judge Ilona Holmes and his affidavit in support which contained omission of material fact and intentional misrepresentation of the truth, seeking to falsely arrest STEVE LOLESKI for the crimes of Extortion and misdemeanor Solicitation to Commit the Disclosure of Confidential Criminal Justice Information. STEVE LOLESKI remained in custody for the warrant executed on August 1, 2012 for four days while his counsel obtained the proper information to fulfill the "Nebbia condition" placed on the Warrant for Arrest.

31.     Defendant PELHAM then actively pursued the filing of formal charges by the Broward County State Attorney's Office. However, after those charges were filed, and the truth regarding PELHAMS reckless and malicious disregard for STEVE LOLESKI'S rights were fully realized by the prosecutor handling the case was terminated by the Broward State Attorney entering a Nolle Prosequi in favor of STEVE LOLESKI on or about March 9. 2016.

        D.     <u>Arrest on August 1, 2012</u>

32.     On August 1, 2012, immediately upon receiving the executed warrant for the arrest of STEVE LOLESKI, Defendant PELHAM travelled to his home to place in him in custody. In proceeding in this manner PELHAM purposely ignored written and verbal offers by STEVE LOLESKI'S retained counsel (to PELHAM personally) that if in fact PELHAM sought the arrest of STEVE LOLESKI he would surrender peaceably and without incident at the convenience of PELHAM.

33. While it was within the lawful performance of his duties to forcefully arrest STEVE LOLESKI at gun point and in front of his family, PELHAM purposely disregarded the offers for an arranged surrender. In fact, PELHAM employed a "take-down" team to apprehend STEVE LOLESKI at his home and by surprise.

34. When PELHAM and the other officers arrived at the LOLESKI residence, STEVE LOLESKI and his wife and son were in the yard. PELHAM, and the other officers at his direction, did forcibly enter the rear yard of the LOLESKI residence dressed in tactical warfare type dress and carrying assault weapons and handguns. PELHAM and other officers were swarming the rear yard shouting at the occupants that included STEVE LOLESKI who was standing in his open boat.

35. Without provocation or necessity PELHAM pointed his gun at each member of the family, none of whom said any word or offered any resistance.

36. At the time of the entry by PELHAM and the other officers, LYNETTE LOLESKI was standing near the pool dressed in her work cloths while watching JL in the pool and other young children in the yard.

37. Defendant PELHAM approached and did threaten LYNETTE LOLESKI, and pointed a firearm at her while shouting "get on the fucking ground."

38. Six-year old JL was in the swimming pool and ran to his mother LYNETTE in fear of the shouting PELHAM. JL grasped his mother's leg while PELHAM, only inches away, continued to point his handgun at LYNETTE.

39. In extreme confusion, LYNETTE repeatedly asked PELHAM "what's happening?" and PELHAM (while pointing his firearm at LYNETTE) repeatedly shouted orders to LYNETTE to "get on the fucking ground."

40. When PELHAM noticed JL running toward his mother he became even more enraged, and attempting to keep the child from LYNETTE LOLESKI PELHAM then placed his firearm to JL's head and continued to shout, placing the child in fear of his life.

41. PELHAM did not cease pointing the gun at the child until another officer approached and force the gun away from JL's head.

    E.    Damages

42. As a result of his unlawful arrest STEVE LOLESKI was placed on unpaid administrative leave from his job as a FLFD firefighter. As a result, STEVE LOLESKI suffered loss of income.

43. As a result of his unlawful arrest STEVE LOLESKI was forced to post bail and retain the services of an attorney.

44. As a result of his unlawful arrest STEVE LOLESKI has been damaged reputationally with regard to his profession, and with regard to his reputation in the public.

45. As a result PELHAM'S egregious and outrageous actions on August 1, 2012 LYNETTE LOLESKI suffered extreme fear, for both herself and her son, which has resulted in continued anxiety and distress, causing loss of enjoyment of life.

46. As a result PELHAM'S egregious and outrageous actions on August 1, 2012 JL suffered extreme fear which has resulted in significant negative psychological damage, continued anxiety and distress, causing significant decline in his development and maturation.

## FEDERAL CRIMES

### COUNT I
### False Arrest/Imprisonment of STEVE LOLESKI –Fourth Amendment - 42 U.S.C. §1983
### (Defendant PELHAM)

47. Plaintiff incorporates paragraphs 1 -35, 42-44 as if specifically pled herein.

48. On or about August 1, 2012 Defendant PELHAM did unlawfully detain and arrest STEVE

LOLESKI while acting under the color of law.

49.     The formal arrest and imprisonment of STEVE LOLESKI for the offenses related to Extortion and Solicitation to Commit the Disclosure of Confidential Criminal Justice Information was plainly incompetent, and violated clearly established constitutional rights. No reasonable officer would have omitted the exculpatory testimony of HUMPHREY from an Affidavit for Arrest, or would have concluded that probable cause or arguable probable cause existed to support the arrest. In fact, at the time of the arrest Defendant PELHAM knew that there existed no arguable probable cause to arrest STEVE LOLESKI but did so anyway.

50.     As a direct and proximate result of the illegal false imprisonment of STEVE LOLESKI by PELHAM he suffered loss of income, reputational damage resulting in loss of future earning capacity, and physical and emotional harm.

**WHEREFORE** Plaintiff STEVE LOLESKI seeks entry of finaljudgment against DefendantPELHAMfor compensatory and punitive damages, as well as, costs, and attorney fees and such other relief that the Court deems just and proper.

<u>COUNT II</u>
<u>Malicious Prosecution of STEVE LOLESKI – Fourth Amendment - 42 U.S.C. §1983</u>
**(Defendant PELHAM)**

51.     Plaintiff hereby incorporates paragraphs 1 -35, 42-44 as if specifically pled herein.

52.     On or about August 1, 2012 Defendant PELHAM did cause the unlawful detention and arrest of STEVE LOLESKI.

53.     At the time of the arrest PELHAM knew, or should have known, that there existed no arguable probable cause to justify his actions.

54.     As a direct and proximate result of the illegal arrest of the Plaintiff STEVE LOLESKI, a criminal case was commenced against him in Broward Circuit Court (case number 12-

011319CF10A) on or about August 13, 2012.

55.  That case was terminated by the Broward State Attorney entering a Nolle Prosequi in favor of STEVE LOLESKI on or about March 9. 2016.

56.  The actions of Defendant PELHAM were without any legal justification such that they constituted malice.

57.  As a direct and proximate result of the malicious prosecution of STEVE LOLESKI he suffered loss of income, reputational damage resulting in loss of future earning capacity, and physical and emotional harm.

**WHEREFORE** Plaintiff STEVE LOLESKI seeks entry of finaljudgment against Defendant PELHAM for compensatory and punitive damages, as well as, costs, and attorney fees and such other relief that the Court deems just and proper.

**STATE CLAIMS**

**COUNT III**
**False Arrest/Imprisonment of STEVE LOLESKI –State Tort**
**(Defendant PELHAM)**

58.  Plaintiff incorporates paragraphs 1 -35, 42-44 as if specifically pled herein.

59.  On or about August 1, 2012 Defendant PELHAM did unlawfully detain and arrest STEVE LOLESKI while acting under the color of law.

60.  The formal arrest and imprisonment of STEVE LOLESKI for the offenses related to Extortion and Solicitation to Commit the Disclosure of Confidential Criminal Justice Information was plainly incompetent. No reasonable officer would have omitted the exculpatory testimony of HUMPHREY from an Affidavit for Arrest, or would have concluded that probable cause or arguable probable cause existed to support the arrest. In fact, at the time of the arrest Defendant PELHAM knew that there existed no arguable probable cause to arrest STEVE LOLESKI but did

so anyway.

61. As a direct and proximate result of the illegal false imprisonment of STEVE LOLESKI by PELHAM he suffered loss of income, reputational damage resulting in loss of future earning capacity, and physical and emotional harm.

**WHEREFORE** Plaintiff STEVE LOLESKI seeks entry of final judgment against Defendant PELHAM for compensatory damages, as well as, costs and such other relief that the Court deems just and proper.

## COUNT IV
### Malicious Prosecution of STEVE LOLESKI – State Tort
**(Defendant PELHAM)**

62. Plaintiff hereby incorporates paragraphs 1 -35, 38-40 as if specifically pled herein.

63. On or about August 1, 2012 Defendant PELHAM did cause the unlawful detention and arrest of STEVE LOLESKI.

64. At the time of the arrest PELHAM knew, or should have known, that there existed no arguable probable cause to justify his actions.

65. As a direct and proximate result of the illegal arrest of the Plaintiff STEVE LOLESKI, a criminal case was commenced against him in Broward Circuit Court (case number 12-011319CF10A) on or about August 13, 2012.

66. That case was terminated by the Broward State Attorney entering a Nolle Prosequi in favor of STEVE LOLESKI on or about March 9. 2016.

67. The actions of Defendant PELHAM were without any legal justification such that they constituted malice.

68. As a direct and proximate result of the malicious prosecution of STEVE LOLESKI he suffered loss of income, reputational damage resulting in loss of future earning capacity, and

physical and emotional harm.

**WHEREFORE** Plaintiff STEVE LOLESKI seeks entry of final judgment against Defendant PELHAM for compensatory damages, as well as, costs, and such other relief that the Court deems just and proper.

## COUNT V
### Intentional Infliction of Emotional Distress upon LYNETTE LOLESKI –State Tort
**(Defendant PELHAM)**

69. Plaintiffs re-allege paragraphs 1 through 8, 32 through 41, 45 and 46 incorporating those allegations into this count.

70. On or about August 1, 2012, Defendant PELHAM and other unknown officers were working together as police officers for Defendant CITY.

71. On said date, Defendant PELHAM did illegally detain STEVE LOLESKI, LYNETTE LOLESKI and JL and did threaten his wife, LYNETTE with a handgun, and place said handgun to the head of six (6) year old JL while shouting at LYNETTE LOLESKI and JL to "get on the fucking ground." PELHAM did so with the intent to purposely cause great fear of death and harm to them, knowing that his actions were unnecessary and unjustified. PELHAM committed these acts from malice.

72. STEVE LOLESKI, LYNETTE LOLESKI and six-year old JL said no words or committed no acts that would cause a reasonable police officer to fear that violence of harm was being committed or about to be committed by them. Each member of the LOLESKI family was completely cooperative.

73. On said date, PELHAM did intentionally touch JL in an offensive manner to wit; placed a firearm against the head of JL without the consent of parents STEVE LOLESKI and LYNETTE LOLESKI, or JL, with the intent to cause extreme emotional distress to JL and his parents.

74.     On said date, PELHAM did intentionally attempt to separate JL from having contact with his parents by first pointing a firearm at his mother LYNETTE LOLESKI and then placing a firearm to his head.

75.     The actions by PELHAM did cause, and were the direct and proximate cause of severe emotional distress to LYNETTE LOLESKI. It was obvious to PELHAM that his actions were causing LYNETTE LOLESKI and JL severe emotional distress.

**WHEREFORE**, Plaintiffs LYNETTE LOLESKI demands compensatory damages against PELHAM, costs and such other and further relief as the Court deems appropriate.

## COUNT VI
### Intentional Infliction of Emotional Distress upon JL –State Tort
**(Defendant PELHAM)**

76.     Plaintiffs re-allege paragraphs 1 through 8, 32 through 41, and 46 incorporating those allegations into this count.

77.     On or about August 1, 2012, Defendant PELHAM and other unknown officers were working together as police officers for Defendant CITY.

78.     On said date, Defendant PELHAM did illegally detain STEVE LOLESKI, LYNETTE LOLESKI and JL, and did threaten JL with a handgun, and place said handgun to his head with the specific intent to cause great fear of death and harm to him and to his mother LYNETTE LOLESKI.

79.     STEVE LOLESKI, LYNETTE LOLESKI and JL said no words or committed no acts that would cause a reasonable police officer to fear that violence of harm was being committed or about to be committed by them.  From the moment PELHAM made his presence known to STEVE and LYNETTE LOLESKI and JL, they were completely cooperative.

80.     On said date, PELHAM did intentionally threaten six-year old JL in an offensive manner

to wit; placed a firearm against the head of JL without the consent of parents STEVE LOLESKI and LYNETTE LOLESKI, or six-year old JL, with the intent to cause emotional distress to both him and his parents.

81. On said date, PELHAM did intentionally attempt to separate JL from having contact with his parents by first pointing a firearm at his mother LYNETTE LOLESKI and then placing a firearm to his head intending to keep him in great fear and emotional distress that has continued to this date.

82. The actions by PELHAM were the direct and proximate cause of severe emotional distress to JL. And during the time he had a gun held to his head, it was obvious PELHAM that his actions were causing JL severe emotional distress.

**WHEREFORE**, Plaintiffs STEVE and LYNETTE LOLESKI, on behalf of JL, demand compensatory damages against PELHAM, costs and such other and further relief as the Court deems appropriate.

## COUNT VII
### Negligent Infliction of Emotional Distress Upon JL
### (Defendants PELHAM)

83. Plaintiffs re-allege paragraphs 1 through 8, 32 through 41, and 46 incorporating those allegations into this count.

84. On or about August 1, 2012, Defendant PELHAM acting in the course and scope of his employment as a police officer for the CITY, and without malice, bad faith or wanton or willful disregard for the safety or well-being of JL did enter the rear of the LOLESKI residence and place a gun to the head of JL causing extreme emotion distress.

85. In doing so PELHAM breached a duty of care owed to JL by creating extreme fear, distress and humiliation to JL.

86. As a direct and proximate result of these Defendants' negligent actions JL suffered severe psychological trauma and emotional harm.

**WHEREFORE**, the Plaintiffs, STEVE AND LYNETTE LOLESKI on behalf of minor child JL, requests this Court enter judgment against Defendants PELHAM and award compensatory, as well all other further relief this Court deems just and proper.

### COUNT VIII
### Negligent Infliction of Emotional Distress upon JL – State Tort
### (Defendant CITY)

87. Plaintiffs re-allege paragraphs 1 through 8, 32 through 41, and 46 incorporating those allegations into this count.

88. On or about August 1, 2012, Defendant PELHAM acting in the course and scope of his employment as a police officer for the CITY, and without malice, bad faith or wanton or willful disregard for the safety of well-being of JL did enter the rear of the LOLESKI residence and place a gun to the head of JL causing extreme emotion distress.

89. In doing so PELHAM breached a duty of care owed to JL by creating extreme fear, distress and humiliation to JL.

90. As a direct and proximate result of these Defendants' negligent actions JL suffered severe psychological trauma and emotional harm.

**WHEREFORE**, the Plaintiffs, STEVE AND LYNETTE LOLESKI on behalf of minor child JL, requests this Court enter judgment against Defendants PELHAM and award compensatory, as well all other further relief this Court deems just and proper.

*Respectfully submitted* this 31st day of August, 2016

s/ *David A. Frankel*
David A. Frankel, Esq.

**Law Offices of David A. Frankel, P.A.**
20 South East 20th Street
Fort Lauderdale. Florida 33315
(954) 557-2244
Fla. Bar Number 741779
david@BlueLotusLaw.com